**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

**RONIQUE THOMAS,**

            **Plaintiff,**

**v.**                             **CIVIL NO. 3:14-CV-02415-M-BK**

**CAROLYN COLVIN,
Acting Commissioner of the Social
Security Administration,**

            **Defendant.**

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

    This case has been referred to the undersigned for Findings, Conclusions, and

Recommendation on the parties' cross motions for summary judgment.  For the reasons that

follow, it is recommended that Plaintiff's *Motion for Summary Judgment*, Doc. 20, be **DENIED**,

Defendant's *Motion for Summary Judgment*, Doc. 23, be **GRANTED**, and the Commissioner's

decision be **AFFIRMED**.

**I.  BACKGROUND**[1]

**A.**    <u>**Procedural History**</u>

    Plaintiff filed an application for disability insurance benefits in May 2011 and

protectively filed for supplemental security income in July 2012, alleging a disability onset date

of October 22, 2009.  Doc. 12-6 at 6-18.  Her application was denied at all administrative levels,

and she now appeals to the United States District Court pursuant to 42 U.S.C. § 405(g).  Doc. 12-

3 at 2-3, 30; Doc.12-4 at 3-5; Doc. 12-5 at 2-3, 8, 11.

---

[1]  The following background comes from the transcript of the administrative proceedings, which
can be found at Doc. 12.

B.    **Facts**

Plaintiff was 40 years old at the time of the administrative hearing and had two years of college.  Doc. 12-3 at 39; Doc. 12-7 at 61.  She had past relevant work as a teacher's aide.  Doc. 12-3 at 48.  In terms of her medical history, Plaintiff presented to the emergency room in September 2011 complaining of moderate pain in her shoulders.  Doc. 12-10 at 22.  On examination, she exhibited limited range of motion due to pain, moderate tenderness, and mild swelling in both shoulders.  Doc. 12-10 at 22-23.  Her x-rays were unremarkable, and she was discharged the same day with pain medication.  Doc. 12-10 at 23, 67-68.

Plaintiff had four surgeries on her left ankle between 2004 and 2012, the last of which was an arthroscopy in January 2012 to clean out scar tissue.  Doc. 12-3 at 39-41; Doc. 12-10 at 145; Doc. 12-11 at 51.  Prior to her fourth surgery, the treating physician noted that the surgery would improve Plaintiff's functional abilities sufficiently such that she could return to work.  Doc. 12-11 at 68.  After the surgery, Plaintiff attended physical therapy.  At that time, she was walking in a boot and favoring her left ankle, but stated that she was able to take care of herself and go out regularly.  Doc. 12-10 at 145.  More than two months after the surgery, in March 2012, Plaintiff presented to her surgeon reporting increased pain and swelling since her prior visit despite going to physical therapy and wearing her fracture boot.  Doc. 12-11 at 132.  When an MRI revealed no significant abnormality, the doctor indicated that he suspected some malingering.  Doc. 12-11 at 139.

The record evidence also includes a June 2012 consultative physical examination performed by Dustin Thrash, M.D.  Doc. 12-11 at 145-50.  On examination, Dr. Thrash noted that Plaintiff (1) was able to lift, carry, and handle light objects; (2) had no palpable muscle spasms and no atrophy of any muscles; (3) could perform both fine and gross manipulations with

her hands; (4) had decreased muscle strength in her left arm and leg (four out of five as opposed to five out of five); (5) had normal muscle strength on her right side; (6) had a normal sensory examination and a negative straight leg raise test; and (7) had normal and symmetric reflexes. Doc. 12-11 at 146. Dr. Thrash noted that Plaintiff was morbidly obese and had an asymmetric, slow, antalgic, limping gait, and she would not attempt to walk without her cane. Doc. 12-11 at 146. However, she was able to rise and squat from that position and rise from a sitting position without assistance. Doc. 12-11 at 146. Plaintiff did have difficulty getting up and down from the examination table and was unable to walk on her heels or toes. Doc. 12-11 at 146. Dr. Thrash noted that Plaintiff generally exhibited normal range of motion except for slightly decreased left shoulder abduction and forward elevation and decreased left ankle/foot function. Doc. 12-11 at 148-49. X-rays of the left shoulder and left ankle revealed no abnormalities, and Plaintiff reported that she only took over the counter medication for her pain. Doc. 12-11 at 146, 150.

Dr. Thrash stated that Plaintiff "gave questionable effort during the examination" as she would not put any weight on her left leg at all. Doc. 12-11 at 149. Dr. Thrash observed that Plaintiff grunted a lot in pain every time she made a movement, and he felt that these were movements that did not warrant such a reaction. Doc. 12-11 at 148. Dr. Thrash stated, "I was being given somewhat of a show to indicate that she really was in very, very severe pain." Doc. 12-11 at 149. Further, although Dr. Thrash did believe Plaintiff's ankle caused her to have limitations, he felt she did not give a very good effort on examination and that her effort was "pretty questionable." Doc. 12-11 at 149. He stated, "Some of the time she was trying to make me think she had no strength." Doc. 12-11 at 149.

Dr. Thrash did find some limitations, however, to wit: (1) Plaintiff needed an assistive device such as a cane or walker for short and long distances and on uneven terrain; (2) she had mild to moderate limitations with lifting and carrying weight due to her left rotator cuff and ankle pain; (3) she was very limited in her ability to bend, stoop, crouch, and squat, and she could reach on her left side only occasionally; and (4) she had no limitations on handling, feeling, grasping, and fingering.  Doc. 12-11 at 149.  Dr. Thrash opined that Plaintiff could only perform occasional reaching on the left side due to decreased range of motion.  Doc. 12-11 at 149.

Throughout the record, more than one physician noted that Plaintiff's limitations and pain level were not particularly severe.  *Compare* Doc. 12-9 at 107 (noting that Plaintiff's complaints of ankle pain are "moderate"), *and* Doc. 12-9 at 117 (noting that her symptoms "moderately limit activities."), *and* Doc.12-10 at 2 (noting that ankle pain was mild), *and* Doc. 12-10 at 25 (stating that Plaintiff's ankle pain was moderate and did not radiate, she walked with a normal gait, and had full range of motion), *and* Doc. 12-10 at 84 (noting that there was no evidence of antalgia in her gait), *with* Doc. 12-9 at 25 (Plaintiff complaining to examining physician that her pain was 12 on a pain scale of one to ten).

## C.    The ALJ's Findings

The ALJ issued a decision in April 2013, finding that Plaintiff has the severe impairments of chronic left ankle synovitis, left shoulder pain, and obesity.  Doc. 12-3 at 20.  Although the ALJ recognized that Plaintiff suffers from severe impairments, he found that her impairments are not of listing-level severity.  Doc. 12-3 at 21.  Additionally, the ALJ noted that two doctors suspected Plaintiff of malingering or pretending to be in more pain than she actually was.  Doc. 12-3 at 27.  The ALJ also observed that Social Security Administration inquiries reflected that

Plaintiff had received unemployment benefits from the fourth quarter of 2010 through the first quarter of 2012, which would have required Plaintiff to represent that she was able to work, further undermining her credibility.  Doc. 12-3 at 27-28.

The ALJ concluded that although Plaintiff could not perform her past relevant work as a teacher's aide, she retains the ability to perform sedentary work, limited by the need to be able to sit or stand at will, and the ability to perform fine finger control with the left hand on only an occasional basis.  Doc. 12-3 at 21, 28.  Relying on vocational expert testimony, the ALJ found that Plaintiff retained the ability to perform quality control jobs, including work as a lens inspector, film inspector, and dowel inspector.  Doc. 12-3 at 29.  Because the ALJ believed Plaintiff was capable of performing other work existing in significant numbers in the national economy, he found that Plaintiff was not disabled within the meaning of the Social Security Act.  Doc. 12-3 at 29.

## II.  APPLICABLE LAW

An individual is disabled under the Act if, *inter alia*, she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" which has lasted or can be expected to last for at least 12 months.  42 U.S.C. § 423(d)(1)(A).  The Commissioner uses the following sequential five-step inquiry to determine whether a claimant is disabled:  (1) an individual who is working and engaging in substantial gainful activity is not disabled; (2) an individual who does not have a "severe impairment" is not disabled; (3) an individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors; (4) if an individual is capable of performing her past work, a finding of "not disabled" must be made; (5) if an individual's impairment precludes her from performing her past work, other factors

including age, education, past work experience, and residual functional capacity must be considered to determine if any other work can be performed. *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. §§ 404.1520(b)-(f), 416.920 (b-(f)).

Under the first four steps of the analysis, the burden of proof lies with the claimant. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id.* If the claimant satisfies her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant can perform. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. *Greenspan*, 38 F.3d at 236; 42 U.S.C. §§ 405(g), 1383(C)(3). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. *Leggett*, 67 F.3d at 564. Under this standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236.

### III. ARGUMENT AND ANALYSIS

Plaintiff argues that the ALJ erred in failing to identify the amount of weight he gave to the consulting physician, Dr. Thrash's, opinion and in not explicitly considering the factors set

forth in 20 C.F.R. §§ 404.1527, 416.927.  Doc. 21 at 3-4.  Additionally, Plaintiff contends, the

ALJ's RFC finding was erroneous because he did not properly accommodate all of the

limitations noted by Dr. Thrash, namely Plaintiff's inability to bend, stoop, crouch, squat, ability

to reach on the left side only occasionally, handle, feel, grasp, and finger only "frequently," or

need to use a cane or walker.  Doc. 21 at 3-4.

Defendant responds that, while the ALJ's RFC finding did not include all of the

limitations opined by Dr. Thrash, the doctor also found that Plaintiff was malingering and not

credible.  Doc. 24 at 6.  Moreover, Defendant observes that Dr. Thrash did find several

limitations, and it is clear from the ALJ's opinion that the ALJ gave weight to those findings.

Doc. 24 at 6-7.  Defendant further argues that the ALJ specifically stated that he considered the

opinion evidence of record in accordance with the requirements of sections 404.1527 and

416.927 and, in any event, Plaintiff cannot demonstrate prejudice.  Doc. 24 at 7.

Plaintiff relies on the rule set forth in *Newton v. Apfel* for the proposition that, absent

reliable medical evidence to the contrary, an ALJ may reject a treating physician's opinion only

after analyzing the physician's views under the criteria set forth in section 404.1527(c).  *Newton

v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000).  However, that rule has no applicability to Dr.

Thrash's opinion because he was not a treating physician; he was a consulting physician who

examined Plaintiff only once.  *See* 20 C.F.R. § 416.902 (providing that a treating physician is

someone who provides or has provided medical treatment or evaluation and who has, or has had,

an ongoing treatment relationship with the claimant insofar as the claimant sees, or has seen, the

physician with a frequency consistent with accepted medical practice for the type of treatment

and/or evaluation required for her medical condition).  Because Dr. Thrash was not a treating

physician, the ALJ was not required to discuss the regulatory factors or give Dr. Thrash's

opinion about Plaintiff's limitations controlling weight and incorporate them into the RFC. Moreover, the ALJ's failure to indicate the weight he gave to Dr. Thrash's opinion is not prejudicial because there is no likelihood that the outcome of the case was affected by that omission. *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1998) (holding that procedural perfection is not required in Social Security disability cases as long as the claimant's substantial rights have not been affected). Accordingly, Defendant is entitled to summary judgment.

## IV.  CONCLUSION

For the foregoing reasons, it is recommended that Plaintiff's *Motion for Summary Judgment*, Doc. 20, be **DENIED**, Defendant's *Motion for Summary Judgment*, Doc. 23, be **GRANTED**, and the Commissioner's decision be **AFFIRMED**.

**SO RECOMMENDED** on July 15, 2015.

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

     A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

9